IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2005

## JAMES O. MARTIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
No. 71856     Richard Baumgartner, Judge

_____

**No. E2004-01908-CCA-R3-PC - Filed August 29, 2005**

_____

The Appellant, James O. Martin, appeals the denial of his petition for post-conviction relief by the Knox County Criminal Court. Martin is currently serving a twenty-two year sentence as a result of his jury conviction for aggravated arson. On appeal, Martin argues that the trial court erred "by failing to grant post-conviction relief." Specifically, he argues that his conviction was unlawfully obtained as a result of juror misconduct and bias of the juror at his trial. After review of the record, the denial of post-conviction relief is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the Appellant, James O. Martin.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip Morton, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On October 12, 1996, the Appellant set fire to the roof of an occupied residence in Knoxville. *James O. Martin*, No. 03C01-9803-CR-00103 (Tenn. Crim. App. at Knoxville, Aug. 26, 1999). As a result of his actions, on September 27, 1997, the Appellant was convicted of aggravated arson and subsequently sentenced to twenty-two years in the Department of Correction. *Id*. The Appellant's conviction and sentence were later affirmed on direct appeal. *Id*.

On January 10, 2001, the Appellant filed a *pro se* petition for post-conviction relief alleging, among other grounds, ineffective assistance of counsel, juror misconduct, and prosecutorial

misconduct. In support of his ineffective assistance of counsel claim, the Appellant alleged the following factual basis:

Petitioner contends that at [the] on set of trial, he was under the influence of psychotropic medications and that attorney knew this fact and proceeded with the trial anyway. Petitioner contends that during voir dire, petitioner informed attorney that one of the jurors seemed familiar to him, but could not recall how said juror was familiar to petitioner. At that time, attorney had petitioner to stand and asked prospective jurors if any of them knew the petitioner, at which time all prospective jurors answered in the negative. Petitioner also contends that said juror should have been challenged for cause by attorney even though petitioner couldn't remember where or how he recognized said juror. Petitioner contends that attorney failed to inform the court of said juror once said juror's identity was realized at the start of closing arguments, which was when petitioner informed attorney that he knew <u>how</u> he knew said juror.

In support of his separate claim that he was denied the constitutional right of an impartial jury, based on juror misconduct, the Appellant additionally alleged in his petition:

The [Appellant] submits that the juror, Mr. Foster, was the bondsman of the petitioner prior to his arrest on the offense of Aggravated Arson. The [Appellant] skipped his bond, thereby causing the bondsman, Mr. Foster, to pay the remaining bond in the amount of ten thousand ($10,000) dollars, a considerable sum. The [Appellant] submits that he was on the "Run" for one year before Mr. Foster caught up with him. When Mr. Foster caught up with the petitioner, he was in the company of Eddie Carmichael, an associate bounty hunter. The petitioner was with his wife at that time. A verbal confrontation erupted between the [Appellant] and Mr. Foster, at which time Mr. Foster accused the petitioner's wife of that time, Lisa Marie Sands Martin of being a whore, and Mr. Foster threatened the petitioner's life by telling him that he was going to shoot him.

There is no doubt that Juror Foster recognized the petitioner during his trial. Petitioner's past record was presented to the jury, for impeachment purposes, when the petitioner testified. Common sense and human nature dictates that Mr. Foster had reason to remember the petitioner. . . .

The petitioner submits to this court that Juror Foster did in fact know the petitioner. That when Mr. Foster was asked questions during voir dire, that he knowingly and purposefully answered the questions in a manner to elicit a seat on the jury that convicted the petitioner. . . .

As stated in the petition, because the Appellant recognized the juror only after close of the proof in the case, trial counsel advised the Appellant that any challenge to the juror would be raised at the motion for new trial.

At the Appellant's motion for new trial hearing, evidence was presented that Juror Foster had previously served as the Appellant's bondsman and that the Appellant had violated the condition of his bond by absconding. The Appellant was eventually located, resulting in a confrontation between Foster and the Appellant and the Appellant's return to custody. Additionally, Lisa Turner,[1] the Appellant's wife at the time of the 1989 incident, filed an affidavit with the court, as part of the motion for new trial, alleging that Foster had propositioned her to have sex with him in exchange for the Appellant's bond. However, no testimonial evidence of that allegation was presented.

Foster was called to testify at the motion for new trial hearing and stated that he did not remember making the Appellant's appearance bond until the issue was brought to his attention after the trial. Foster explained that his confrontation with the Appellant occurred over seven years ago and that he had made appearance bonds for many people since that time. *Id*. He specifically testified that no information regarding his prior dealings with the Appellant was communicated to the jury. *Id*. Accrediting the testimony of Foster, the trial court denied the motion for new trial, specifically concluding that "juror Foster had no bias against the [Appellant] and any argument to the contrary qualified as 'pure speculation.'" *Id*. On direct appeal, the Appellant specifically challenged, among other grounds, Foster's service on the jury. *Id*. The denial of the motion for new trial was affirmed on direct appeal, with a panel of this court finding that "the evidence has not established that juror Foster was prejudiced against the [Appellant]." *Id*.

After the appointment of counsel in the post-conviction case, an amended petition was filed on August 28, 2003. A hearing was conducted on April 29, 2004, at which trial counsel, the Appellant, and two of the Appellant's ex-wives testified. After hearing the evidence presented at the post-conviction hearing, the post-conviction court denied the petition by order on July 29, 2002, based upon a finding that the issue had been previously determined. This appeal followed.

**Analysis**

On appeal, it is unclear from the Appellant's statement of the issue whether the assigned error is directed at the post-conviction court or is based on an ineffective assistance of counsel claim. The single issue, as framed, asserts:

The trial court committed prejudicial legal error by failing to grant post-conviction relief when it ruled that additional proof of a sexual proposition made towards petitioner's wife by his bail bondsman, who later would be selected as a juror in petitioner's trial for aggravated arson, would not be sufficient to change the outcome of the petitioner's motion for new trial, which the trial court denied.

The State argues that relief was properly denied because: (1) the issue was previously determined; (2) the alleged deficiency was a strategical choice; and (3) the alleged deficiency resulted in no prejudice to the Appellant.

---

[1]We note that Ms. Turner is also identified in the record as Lisa Coffman.

We note initially that the Appellant's proof presented at the post-conviction hearing was essentially the same as that presented at the motion for new trial, with the only distinction being that the Appellant called his ex-wife as a witness at the post-conviction hearing as opposed to presenting her statement by affidavit at the motion for new trial. At the post-conviction hearing, Lisa Turner, the Appellant's ex-wife, testified that she had approached Foster, a bail bondsman, about getting her husband out of jail. Turner testified she told Foster they had no money; however, Foster told her he would make the Appellant's bond if Turner would agree to have sex with him. Turner testified that she did not have sex with Foster; however, Foster did make the Appellant's appearance bond. After hearing the testimony presented, including the testimony of Connie Martin, another ex-wife, the post-conviction court found that the issue regarding juror Foster's prejudice had been previously determined.[2] The court concluded:

> Back in 1997 after [the Appellant's] conviction the major grounds for the motion for new trial in this case was juror misconduct. And at that time when this motion was filed all of these issues that we've heard about today were raised before the Court, including this admission of this Affidavit by this last witness, Ms. Coffman, and her connection with Mr. Foster. As a result of that obviously I was concerned and we subpoenaed and had Mr. Foster here at that motion for new trial. And he was put on the stand and questioned about this . . . , [and] his testimony was to the effect that - - that although that had happened that he did not remember [the Appellant], didn't remember him throughout the trial of the case, and it had no impact on his - - on his deliberations or verdict in this case. And, obviously, I accepted his testimony as being accurate in this case because I'm confident that had he testified to the contrary I would have granted a new trial at that time.

> That issue was also raised on appeal and the Court of Appeals, . . . obviously felt the same way. So I think this is a predetermined issue. I think that this issue has been raised, litigated, and found to be without merit in the past. And I don't think the new spin on it given here today that there should have been more conversation about the relationship between the former wife and Mr. Foster would change that outcome in any way.

Claims which have been previously determined cannot establish a basis for post-conviction relief. Tenn. Code Ann. § 40-30-106(f) (2003). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." *Id.* at (h).

The issue of juror Foster's bias was raised in the Appellant's motion for new trial, on which a hearing was held before the trial court. An affidavit from the Appellant's ex-wife detailing her experiences with Foster was attached, though no specific witnesses were called in support of that

---

[2]At the post-conviction hearing, Connie Martin testified that during the arson trial, the Appellant "wasn't the same way" he usually was, that "[h]e was kind of spacey like."

affidavit.[3]  After considering the evidence presented, including Foster's testimony that he did not recall the Appellant, the trial court denied the motion for new trial, specifically accrediting Foster's testimony.  A panel of this court subsequently found on direct appeal that no prejudice had been established against the Appellant.  The affidavit, containing virtually the same statements as those made by Turner at the post-conviction hearing, would have been included for review.  The Appellant now appears to assert the same issue as that raised in the motion for new trial, only now attempting to enlarge the evidence presented in support of the issue.  However, a panel of this court has previously determined that, because no prejudice existed, the Appellant was not entitled to a new trial.  Thus, we must conclude that the issue of Foster's bias and prejudice has been previously determined.  Because the issue of juror Foster's misconduct and bias was previously determined at the motion for new trial and on direct appeal, any further review by this court is foreclosed.  The decision on a question on a former appeal is the law of the case on a subsequent appeal in the same case.  *City of Bristol v. Bostwick,* 240 S.W. 774 (Tenn. 1922).  The issue presented in this case involves the same question decided on the previous appeal and is res judicata on that issue.  *See Staub v. Sewanee Coal, Coke & Land Co.,* 205 S.W. 320 (Tenn. 1918).

Additionally, the post-conviction court reviewed the Appellant's petition within the context of an ineffective assistance of counsel claim and found that counsel was not ineffective under the holding of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  We agree and note that, even if we considered the Appellant's claim as one of ineffective assistance of counsel, the Appellant has failed to establish prejudice resulting from trial counsel's alleged deficient performance at the motion for new trial.

## CONCLUSION

Based upon the foregoing, the Knox County Criminal Court's denial of the Appellant's petition for post-conviction relief is affirmed.

_____
DAVID G. HAYES, JUDGE

---

[3] Rule 33(c), Tennessee Rules of Criminal Procedure, provides that, "Affidavits in support of a motion for new trial may be filed with the motion or an amended motion.  If filed, they shall be considered as evidence by the court."